Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CARMEN MARÍA BORGOS RAMOS, SR. JOSUÉ PÉREZ ADM. AUXILIAR PROGRAMA ADULTO<br><br>RECURRIDOS<br><br>v.<br><br>**AIDA IRIS BORGOS RAMOS T/C/C AILEEN BORGOS RAMOS,** DAMARIS NIEVES BORGOS<br><br>PETICIONARIA | KLCE202500069 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV05464<br><br>Sobre: Desahucio en Precario |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2025.

### I.

El 24 de enero de 2025, la señora Aida Iris Borgos Ramos (señora Aida Borgos o peticionaria), también conocida como Aileen Borgos Ramos, presentó una petición de *Certiorari* en la que solicitó que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 7 de enero de 2025.[1] En el dictamen, el TPI declaró No Ha Lugar una solicitud de relevo de sentencia promovida por la señora Aida Borgos para suspender los efectos de una *Sentencia* emitida en rebeldía el 21 de agosto de 2024 en el pleito sobre desahucio en precario que la señora Carmen María Borgos Ramos (señora Carmen Borgos o recurrida) presentó en contra de la peticionaria y su hija, la señora

---

[1] Apéndice del *Certiorari,* Anejo XXII, pág. 159. Notificada y archivada digitalmente en autos el 8 de enero de 2025.

Damaris Nieves Borgos (señora Damaris Nieves), quienes son su hermana y su sobrina, respectivamente.[2]

Junto al recurso, la señora Aida Borgos radicó una *Moción urgente en auxilio de jurisdicción* en la que solicitó que suspendiéramos los procedimientos del caso a nivel del foro primario hasta la resolución de su petición.

El 27 de enero de 2025, emitimos una *Resolución* en la que declaramos Ha Lugar la solicitud de orden en auxilio de jurisdicción y, en consecuencia, ordenamos la paralización de los procedimientos ante el TPI. Asimismo, le concedimos a la señora Carmen Borgos un término de diez (10) días para exponer su posición sobre los méritos de la petición de *Certiorari*.

El 30 de enero de 2025, la recurrida presentó una *Solicitud de término para presentar escrito correspondiente* en la que solicitó un término adicional para exponer su posición sobre el recurso.

El 31 de enero de 2025, la peticionaria radicó un escrito titulado *Posición de no reparo a solicitud de término para alegar* en el que expresó no tener reparos en cuanto a la concesión de un término adicional a la recurrida.

El 5 de febrero de 2025, emitimos una *Resolución* en la que le concedimos a la recurrida un término final hasta el 25 de febrero de 2025 para exponer su posición.

El 6 de febrero de 2025, la señora Carmen Borgos presentó una *Solicitud de desestimación* en la que solicitó que desestimáramos el recurso por falta de jurisdicción, por ser un intento tardío de apelar la *Sentencia* dictada en este caso, advenida final y firme, y por incumplir requisitos reglamentarios y jurisprudenciales.

---

[2] Íd., Anejo VI, págs. 33-34. Notificada y archivada digitalmente en autos el 22 de agosto de 2024.

Al mismo tiempo, la recurrida también radicó un *Alegato en oposición a recurso de certiorari* en el que solicitó que rechacemos expedir el auto de *Certiorari* o, en la alternativa, confirmemos la *Resolución* recurrida.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de *Certiorari.*

## II.

El caso de marras tiene su génesis el 17 de junio de 2024 cuando la señora Carmen Borgos radicó una *Demanda de desahucio* en contra de la señora Aida Borgos y la señora Damaris Nieves para obtener el desahucio de estas de una propiedad, ubicada en el Municipio de San Juan (propiedad).[3] En la reclamación, la recurrida alegó que:

1. Era la única dueña de la propiedad sita en la Calle Prudencio Rivera Martínez #136 en San Juan, Puerto Rico, luego de adquirirla el 24 de mayo de 2012;
2. En 2016 tuvo que mudarse a Nueva York por razones personales, pero mantuvo la intención de regresar a residir en la propiedad, la cual dejó cerrada con llaves y candados;
3. Desde el 2017, fue notificada en varias ocasiones que la peticionaria y la señora Damaris Nieves residían intermitentemente en la propiedad, luego de romper las cerraduras y candados que la protegían;
4. En varias ocasiones, la recurrida les dejó saber que tenían que abandonar la propiedad porque tenía intenciones de regresar a residir en ella, pero la peticionaria y la señora Damaris Nieves ignoraron sus peticiones;
5. En el 2021, la recurrida visitó la propiedad en dos ocasiones y encontró que las cerraduras habían sido cambiadas y colocó nuevas;
6. En el 2022, la recurrida regresó nuevamente a la propiedad, encontró que nuevamente las cerraduras habían sido cambiadas, observó que al interior de la propiedad se encontraban pertenencias de la peticionaria y la señora Damaris Nieves y volvió a colocar nuevas cerraduras antes de regresar a los Estados Unidos;

---

[3] Íd., Anejo I, págs. 1-18.

7.  Por razones de salud y tener que regresar a los Estados Unidos no pudo solicitar auxilio ante el TPI;

8.  En los pasados años intentó infructuosamente resolver la situación por vía extrajudicial, debido a que la peticionaria y la señora Damaris Nieves son familiares suyos;

9.  En mayo de 2024, fue notificada de que la peticionaria y la señora Damaris Nieves estaban ocupando nuevamente la propiedad;

10.  El 3 de junio de 2024, la recurrida regresó a la propiedad, pero supo que al interior se encontraban pertenencias de la peticionaria y la señora Damaris Nieves;

11.  La propiedad era la última dirección física conocida de la peticionaria.

Por todo ello, argumentó que procedía el desahucio de la peticionaria y la señora Damaris Nieves porque ocupaban la propiedad de forma precarista, sin título, sin autorización y sin satisfacer renta alguna.

El 17 de junio de 2024, la Secretaría del TPI expidió un *Emplazamiento y citación por desahucio* tanto para la señora Aida Borgos, como para la señora Damaris Nieves.[4] En virtud de ello, se citó vista por videoconferencia para el 2 de julio de 2024.

El 27 de junio de 2024, el TPI emitió una *Orden* en la que le concedió veinticuatro (24) horas a la señora Carmen Borgos para acreditar el diligenciamiento del emplazamiento.[5]

El 28 de junio de 2024, la señora Carmen Borgos presentó una *Moción en cumplimiento de orden* en la que expresó que la peticionaria y la señora Damaris Nieves no habían podido ser emplazadas, pese a los esfuerzos realizados.[6] Por ello, solicitó al foro primario que determinara si el caso debía continuar bajo el procedimiento de desahucio sumario o convertirse a un proceso ordinario.

---

[4] Entradas Núm. 2 y 3 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[5] Entrada Núm. 5 del expediente digital del caso en el SUMAC. Notificada y archivada digitalmente en autos el 28 de junio de 2024.

[6] Apéndice de la petición de *Certiorari*, Anejo III, págs. 21-24.

En apoyo de su solicitud, sometió una declaración jurada suscrita por el emplazador Ángel Betancourt (señor Betancourt) en la que declaró, bajo juramento, que:

1. Los días 21, 24 y 27 de junio de 2024 visitó la propiedad, indicada como la última dirección conocida de la señora Aida Borgos y la señora Damaris Nieves, pero no encontró a nadie.
2. En la primera ocasión, dejó un mensaje para que se comunicaran con él, pero no lo hicieron. Asimismo, un vecino le expresó que la casa estaba vacía, la peticionaria y la señora Damaris Nieves se habían mudado y no tenía conocimiento sobre cómo conseguirlas.
3. En otra ocasión, habló con una vecina que le comentó que estas se habían ido a los Estados Unidos y no sabía si regresarían.
4. Realizó llamadas y envió mensajes de texto a números que, por información suministrada por la recurrida, pertenecían a la señora Aida Borgos y la señora Damaris Nieves, pero no logró comunicación alguna.
5. En el Cuartel Municipal de San Juan y en la Alcaldía de San Juan le indicaron que no se conocía el paradero de la señora Aida Borgos y la señora Damaris Nieves.
6. Realizó una búsqueda por internet que no arrojó información adicional.

El 1 de julio de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Orden* en la que autorizó el emplazamiento por edicto, dejó sin efecto el señalamiento de vista para el 2 de julio de 2024 y convirtió el trámite del caso a ordinario.[7]

Ese mismo día, la Secretaría del TPI expidió el emplazamiento por edicto.[8]

El 22 de julio de 2024, la señora Carmen Borgos radicó una *Moción informativa y en cumplimiento de orden* en la que informó que el 18 de julio de 2024 se publicó el emplazamiento por edicto en el periódico El Vocero y envió copia del emplazamiento por edicto, la *Demanda de desahucio* y la *Orden* del 18 de junio de 2024 a la última dirección conocida de la peticionaria y la señora Damaris Nieves mediante correo certificado con acuse de recibo.[9] También, detalló

---

[7] Íd., Anejo IV, pág. 25. Véase la Entrada Núm. 7 del expediente digital del caso en el SUMAC.

[8] Entrada Núm. 9 del expediente digital del caso en el SUMAC. Archivado digitalmente en autos ese mismo día.

[9] Apéndice de la petición de *Certiorari*, Anejo V, págs. 26-32.

que el Departamento de la Familia y la Oficina del Procurador de las Personas de Edad Avanzadas (OPPEA) también fueron notificadas de la reclamación mediante correo certificado con acuse de recibo. Para evidenciar lo alegado, sometió el emplazamiento por edicto según publicado, una declaración jurada suscrita por un representante del periódico certificando la publicación y recibos del envío de los documentos por correo certificado con acuse de recibo.

El 23 de julio de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Orden* en la que tomó conocimiento del emplazamiento por edicto de la peticionaria y la señora Damaris Nieves.[10]

El 20 de agosto de 2024, la señora Carmen Borgos presentó una *Moción en solicitud de anotación de rebeldía* en la que solicitó al TPI que le anotara la rebeldía a la señora Aida Borgos y la señora Damaris Nieves, toda vez que había transcurrido el término de treinta (30) días que tenían para contestar la reclamación sin que lo hicieran.[11] También, solicitó que se dictara *Sentencia* conforme a las alegaciones esbozadas en la *Demanda de desahucio*. Además, informó que las notificaciones enviadas a la peticionaria y la señora Damaris Nieves fueron devueltas por el Correo Postal.

Al mismo tiempo, el TPI emitió una *Orden* en la que anotó la rebeldía a la peticionaria y la señora Damaris Nieves y le concedió diez (10) días a la señora Carmen Borgos para solicitar el remedio que procediera.[12]

El 21 de agosto de 2024, la recurrida radicó una *Moción en cumplimiento de orden y en solicitud de que se dicte sentencia en rebeldía* en la que solicitó al TPI que dictara sentencia en rebeldía declarando Con Lugar la *Demanda de desahucio* y ordenara el

---

[10] Entrada Núm. 12 del expediente digital del caso en el SUMAC.

[11] Apéndice del *Alegato en oposición a recurso de certiorari*, Anejo I, págs. 1-9.

[12] Íd., Anejo II, pág. 10. Notificada y archivada digitalmente en autos el 21 de agosto de 2024.

desahucio de la señora Aida Borgos y la señora Damaris Nieves de la propiedad.[13]

Ese mismo día, el TPI emitió una *Sentencia* en rebeldía en la que declaró Con Lugar la *Demanda de desahucio* y, en consecuencia, ordenó a la señora Aida Borgos y la señora Damaris Nieves desalojar la propiedad en un término de cinco (5) días, contados a partir de la fecha del archivo en autos de la notificación de la determinación.[14] También, les apercibió de que, de no apelar o desalojar la propiedad dentro del término dispuesto, se ordenaría el lanzamiento sin citarle ni oírle, según lo dispuesto en el Art. 632 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, según enmendado, 32 LPRA sec. 2836 (Código de Enjuiciamiento Civil), mediante mandamiento dirigido al Alguacil. De la misma manera, estableció una fianza en apelación de $5,000.00, en virtud del Art. 630 del Código de Enjuiciamiento Civil, *supra* sec. 2832, y ordenó a la Secretaría del TPI a expedir la notificación de la *Sentencia* mediante edicto. Por último, consignó lo siguiente:

> Una vez la parte demandante acredite la notificación de sentencia por edicto y la notificación a la última dirección conocida de la parte demandada, podrá solicitar la ejecución de la sentencia y el lanzamiento, en caso de que la parte demandada no haya desalojado la propiedad.
>
> Los escritos post sentencia radicados en el caso deberán ser notificados a la parte demandada mediante correo postal, correo electrónico, personalmente o mediante cualquier medio de comunicación y así deberá ser acreditado al Tribunal por la parte demandante, toda vez que el Sistema Unificado de Manejo y Administración de Casos (SUMAC) no notifica o alerta a aquellas partes que no han comparecido al pleito sobre los escritos presentado por otras partes.[15]

El 22 de agosto de 2024, la Secretaría del TPI emitió la correspondiente *Notificación de sentencia por edicto*.[16]

El 30 de agosto de 2024, la recurrida presentó una *Moción informativa* en la que informó que el 28 de agosto de 2024 el

---

[13] Íd., Anejo III, págs. 11-13.
[14] Apéndice de la petición de *Certiorari*, Anejo VI, págs. 33-34. Notificada y archivada en autos el 22 de agosto de 2024.
[15] Íd.
[16] Íd., Anejo VII, pág. 35. Archivada digitalmente en autos ese mismo día.

periódico El Vocero publicó la *Notificación de sentencia por edicto* y que envió una copia de esta y la *Sentencia* a la última dirección conocida de la peticionaria y la señora Damaris Nieves.[17] Para acreditarlo, sometió la notificación según publicada junto a una declaración jurada de un representante del periódico.

El 3 de septiembre de 2024, el TPI emitió una *Orden* en la que tomó conocimiento de la publicación por edicto de la *Sentencia*.[18] También, expresó lo siguiente:

> Tomamos conocimiento de que se preparó comunicación dirigida a la parte demandada, mediante correo certificado, no obstante la misma no tiene sello con fecha de recibida en el correo postal, la cual certifica en que fecha fue enviada la misma.[19]

El 4 de septiembre de 2024, la señora Aida Borgos y la señora Damaris Nieves radicaron una *Moción* por derecho propio en la que solicitaron una prórroga de treinta (30) días para obtener representación legal.[20] Según adujeron, la peticionaria acababa de llegar de Estados Unidos y la señora Damaris Nieves era residente de Boston, Massachusetts.

El 5 de septiembre de 2024, la recurrida presentó una *Moción informativa* en la que incluyó copia del recibo del correo certificado del envío de la *Notificación de sentencia por edicto* para corregir la falta detallada por el TPI en su *Orden* del 3 de septiembre.[21]

Ese mismo día, dicha parte también radicó una *Moción en oposición a solicitud de prórroga* en la que se opuso a la concesión de una prórroga a favor de la peticionaria y la señora Damaris Nieves.[22]

---

[17] Íd., Anejo VIII, págs. 36-43.
[18] Entrada Núm. 21 del expediente digital del caso en el SUMAC. Notificada y archivada digitalmente en autos el 4 de septiembre de 2024.
[19] Íd.
[20] Apéndice de la petición de *Certiorari*, Anejo IX, pág. 44. Nótese, además, que la peticionaria y la señora Damaris Nieves comparecieron dentro de los términos estatutarios para solicitar reconsideración de la *Sentencia* ante el TPI o acudir mediante apelación ante el Tribunal de Apelaciones.
[21] Entrada Núm. 23 del expediente digital del caso en el SUMAC.
[22] Entrada Núm. 24 del expediente digital del caso en el SUMAC.

El 6 de septiembre de 2024, el TPI emitió una *Orden* en la que, respecto a la *Moción* por derecho propio radicada por la peticionaria y la señora Damaris Nieves, resolvió "[n]ada que proveer. El caso tiene sentencia del 21 de agosto de 2024".[23]

El 30 de septiembre de 2024, la recurrida presentó una *Moción en solicitud de orden y mandamiento de lanzamiento* en la que solicitó al TPI que emitiera una orden y mandamiento de lanzamiento en contra de la peticionaria y la señora Damaris Nieves.[24] Según adujo, habían transcurrido los "treinta (30) días" para apelar la *Sentencia* y tampoco se había cumplido con el dictamen.

Ese mismo día, el TPI emitió una *Orden de lanzamiento* en la que ordenó el lanzamiento de la señora Aida Borgos y la señora Damaris Nieves de la propiedad.[25]

El 2 de octubre de 2024, la Secretaría del TPI emitió un *Mandamiento de lanzamiento* en el que requirió al Alguacil del tribunal a dar fiel cumplimiento de la *Orden de lanzamiento*.[26]

El 16 de octubre de 2024, la OPPEA radicó una *Moción presentando informe* en la que sometió al TPI un informe sobre la situación social y servicios a los que tendría derecho la señora Aida Borgos.[27] Entre las gestiones realizadas, según detalladas en el informe, la OPPEA visitó la propiedad y fue recibida por la señora Damaris Nieves.

El 1 de noviembre de 2024, la peticionaria presentó una *Moción* por derecho propio en la que, en aras de radicar una contrademanda, reclamó que la recurrida utilizó información falsa

---

[23] Entrada Núm. 27 del expediente digital del caso en el SUMAC. Notificada y archivada digitalmente en autos el 9 de septiembre de 2024.

[24] Entrada Núm. 28 del expediente digital del caso en el SUMAC.

[25] Entrada Núm. 29 del expediente digital del caso en el SUMAC. Archivada digitalmente en autos el 1 de octubre de 2024.

[26] Apéndice de la petición de *Certiorari*, Anejo XI, págs. 46-47. Archivada digitalmente ese mismo día.

[27] Entrada Núm. 31 del expediente digital del caso en el SUMAC.

para obtener la escritura presentada como título de la propiedad y solicitó que se paralizara el lanzamiento y se le concediera tiempo para recopilar la evidencia necesaria.[28] Acompañó el escrito con copias de una factura de la Autoridad de Acueductos y Alcantarillados de la propiedad, una factura del servicio eléctrico, una "Carta de poder" suscrita por la peticionaria a favor de la señora Carmen Borgos, una *Certificación de propiedad inmueble* emitida por el Registro de la Propiedad y una *Declaración jurada* suscrita por la peticionaria.

El 4 de noviembre de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Orden* en la que, atendiendo la *Moción* más reciente de la peticionaria, resolvió "[n]ada que proveer. El caso tiene Sentencia del 21 de agosto de 2024. Se le exhorta a buscar asesoría legal. Cualquier reclamación deberá presentarse en un pleito independiente".[29]

El 26 de noviembre de 2024, la señora Aida Borgos radicó otra *Moción* por derecho propio en la que solicitó la paralización y cancelación de la orden de desalojo en su contra.[30] Según reiteró, tenía derecho hereditario a estar en la propiedad de la que la recurrida alegadamente se apropió fraudulentamente.

Al mismo tiempo, presentó una *Moción urgente* idéntica a la anterior en la que añadió que tenía un marcapasos para atender una condición de salud.[31]

Ese mismo día, el TPI emitió, notificó y archivó digitalmente en autos una *Orden de lanzamiento enmendada* en la que enmendó la *Orden de lanzamiento* previamente dictada para incluir que el lanzamiento no podría realizarse sin que estuviese presente un funcionario del Departamento de la Familia o la OPPEA.[32]

---

[28] Apéndice de la petición de *Certiorari*, Anejo XII, págs. 48-58.
[29] Entrada Núm. 34 del expediente digital del caso en el SUMAC.
[30] Entrada Núm. 35 del expediente digital del caso en el SUMAC.
[31] Apéndice de la petición de *Certiorari*, Anejo XIII, pág. 59.
[32] Entrada Núm. 38 del expediente digital del caso en el SUMAC.

Asimismo, el foro primario también emitió una *Orden* en la que le concedió al Departamento de la Vivienda y al Departamento de la Familia un término de veinte (20) días para rendir un informe social sobre la peticionaria.[33]

El 27 de noviembre de 2024, la recurrida presentó una *Moción en cumplimiento de orden* en la que solicitó al TPI que declarara No Ha Lugar la solicitud de la señora Aida Borgos para paralizar el lanzamiento y cuestionar la *Sentencia,* la cual advino final, firme e inapelable.[34] Según argumentó, las alegaciones realizadas por la peticionaria fueron presentadas a destiempo y no debían ser consideradas por el foro primario.

El 2 de diciembre de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Orden* en la que ordenó la continuación del proceso de lanzamiento.[35]

El 3 de diciembre de 2024, la señora Aida Borgos radicó una *Moción urgente* por derecho propio en la que reafirmó que tenía derecho a permanecer en la propiedad, así como sus alegaciones sobre el supuesto fraude cometido por la recurrida.[36] En consecuencia, solicitó que se dejara sin efecto el desahucio.

El 3 de diciembre de 2024, el TPI emitió una *Orden* en la que, atendiendo la *Moción urgente* de la peticionaria, reiteró que no había nada que proveer y que su reclamo sobre fraude debía ser presentado en un pleito independiente.[37] A su vez, le exhortó a buscar asesoría legal.

El 6 de diciembre de 2024, la Secretaría del TPI emitió un *Mandamiento de lanzamiento* en el que le requirió nuevamente al

---

[33] Entrada Núm. 40 del expediente digital del caso en el SUMAC. Notificada y archivada digitalmente en autos el 27 de noviembre de 2024.
[34] Entrada Núm. 41 del expediente digital del caso en el SUMAC.
[35] Entrada Núm. 42 del expediente digital del caso en el SUMAC.
[36] Entrada Núm. 43 del expediente digital del caso en el SUMAC.
[37] Entrada Núm. 46 del expediente digital del caso en el SUMAC. Notificada y archivada digitalmente en autos el 9 de diciembre de 2024.

Alguacil del TPI dar fiel cumplimiento a la *Orden de lanzamiento enmendada.*[38]

El 10 de diciembre de 2024, la Oficina de Trabajo Social del Departamento de la Vivienda presentó un *Estudio Socio-Económico* sobre la señora Aida Borgos, según solicitado por el TPI.[39] En el informe, se identificó la propiedad como la dirección de la peticionaria.

Ese mismo día, la señora Aida Borgos radicó una *Urgente-Moción asumiendo representación legal, solicitando paralización de los procedimientos y prórroga para continuación del pleito* en la que solicitó al TPI que autorizara la representación legal de la peticionaria, le concediera diez (10) días para informar sus defensas ante la reclamación y ordenara la paralización del lanzamiento.[40]

El 11 de diciembre de 2024, el Departamento de la Familia radicó un *Informe social* sobre la señora Aida Borgos en cumplimiento con la orden del foro primario.[41] En el informe, también se identificó la propiedad como la dirección residencial de la peticionaria.

Ese mismo día, la recurrida presentó una *Moción en oposición a urgente moción asumiendo representación legal, solicitando paralización de los procedimientos y prórroga para continuación del pleito* en la que solicitó al TPI que declarara No Ha Lugar lo solicitado por la peticionaria.[42] También, resaltó que la dirección postal de la señora Aida Borgos a la que se enviaron todas las notificaciones, incluyendo la *Sentencia* dictada en el caso, era la misma que proveyó la peticionaria en sus comparecencias por derecho propio. Por ello, arguyó que el foro primario debía resolver que fue oportunamente

---

[38] Entrada Núm. 45 del expediente digital del caso en el SUMAC. Archivada digitalmente en autos ese mismo día.
[39] Entrada Núm. 47 del expediente digital del caso en el SUMAC.
[40] Apéndice de la petición de *Certiorari*, Anejo XIV, págs. 60-61.
[41] Entrada Núm. 49 del expediente digital del caso en el SUMAC.
[42] Apéndice de la petición de *Certiorari*, Anejo XV, págs. 62-66.

notificada a la dirección adecuada, conforme a derecho. Además, planteó que, tras su primera comparecencia, la peticionaria aún podía solicitar la reconsideración de la *Sentencia* o apelarla ante el TPI. Por último, denunció que la comparecencia más reciente de la peticionaria resultaba ser un abuso de derecho como intento para impedir la ejecución de la *Sentencia*.

Al mismo tiempo, el TPI emitió, notificó y archivó digitalmente en autos una *Orden* en la que autorizó la representación legal de la señora Aida Borgos y le concedió a la recurrida un término de diez (10) días para exponer su posición respecto a los remedios solicitados por la peticionaria.[43]

El 12 de diciembre de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Orden* en la que declaró No Ha Lugar la solicitud de paralización y prórroga de la señora Aida Borgos.[44] En consecuencia, ordenó la continuación de los procedimientos post sentencia.

El 17 de diciembre de 2024, la señora Aida Borgos radicó una *Moción solicitando relevo de sentencia en rebeldía por falta de jurisdicción, violación al debido proceso de ley y fraude (Regla 49.2(c) y (d))* en la que solicitó al TPI que dejara sin efecto la *Sentencia* dictada en rebeldía el 21 de agosto de 2024.[45]

Por un lado, planteó que el foro primario no adquirió jurisdicción sobre la peticionaria. A esos efectos, arguyó que: (1) la declaración jurada del señor Betancourt sobre las gestiones realizadas para emplazarla no cumplía con las exigencias del debido proceso de ley; (2) la orden para omitir el envío de copia del emplazamiento a la última dirección de la demandada se basó en dicha declaración jurada insuficiente; (3) la recurrida tenía la

---

[43] Íd., Anejo XVI, pág. 67.
[44] Entrada Núm. 55 del expediente digital del caso en el SUMAC.
[45] Apéndice de la petición de *Certiorari*, Anejo XVII, págs. 69-132.

obligación de llevar a cabo todas las gestiones razonables para notificar a la peticionaria; (4) la dirección de la demandada podía ser encontrada mediante diligencias razonables; (5) la recurrida no relató gestión alguna para notificar a la peticionaria en la dirección en la que podría encontrarse en Nueva York, ni reveló la existencia de dicha segunda vivienda, lo cual constituyó un acto de mala fe; y (6) no realizó gestión alguna con los hijos de la peticionaria.

Por el otro, argumentó que la recurrida obtuvo el dictamen mediante fraude. Al respecto, alegó que la propiedad fue transferida fraudulentamente a la recurrida, a quien la señora Aida Borgos y sus demás hermanos delegaron la tarea de resolver los asuntos de herencia de los padres ambas partes. Según planteó, la propiedad perteneció al Estado Libre Asociado de Puerto Rico mientras era usufructuada por los padres de ambas hasta que, luego de la muerte de estos, fue transferida en el 2012 al Municipio de San Juan con el propósito de concederse títulos de propiedad a los residentes del Sector Las Monjas en Hato Rey. Así, adujo que, posteriormente, el Municipio de San Juan adjudicó la propiedad a la señora Carmen Borgos sin que residiera en ella.

Además de solicitar en relevo, la peticionaria renovó su solicitud de vista evidenciaria y de paralización del lanzamiento. También, agregó que era necesaria la intervención del foro primario porque, de esperar a radicar un nuevo pleito para plantear el alegado fraude, habría sido lanzada de la propiedad, sufriendo un daño irreparable.

Al mismo tiempo, la peticionaria presentó una *Urgente-moción solicitando paralización del desahucio* en la que reiteró su solicitud de paralización del lanzamiento hasta que el TPI celebrara una vista y resolviera su petición.[46]

---

[46] Íd., Anejo XIX, págs. 140-141.

El 18 de diciembre de 2024, la recurrida radicó una *Moción en oposición a urgente moción solicitando paralización del desahucio* en la que se opuso a la paralización de los procedimientos post sentencia.[47] Además, subrayó que el lanzamiento no impedía la posterior presentación, independiente, de los alegados derechos de la peticionaria a la titularidad de la propiedad. Por último, señaló que la peticionaria tampoco sufriría un daño irreparable debido al lanzamiento porque no residía en la propiedad, sino en Nueva York, según expresó en sus comparecencias.

El 19 de diciembre de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Orden* en la que ordenó la paralización de los procedimientos de lanzamiento hasta tanto la recurrrida se expresara sobre la solicitud de relevo de sentencia y se resolviera, en aras de no tornar el asunto en académico.[48]

El 27 de diciembre de 2024, la peticionaria presentó un *Suplemento a moción bajo la Regla 49.2 de Procedimiento Civil* en la que reiteró su solicitud de que se celebrara una vista y se recibiera prueba testifical y documental.[49]

El 2 de enero de 2025, la recurrida radicó una *Moción en cumplimiento de orden y en oposición a moción solicitando relevo de sentencia en rebeldía por falta de jurisdicción, violación al debido proceso de ley y fraude (Regla 49.2(c) y (d)) y al Suplemento a moción bajo la Regla 49.2 de Procedimiento Civil* en la que reafirmó su oposición a la solicitud de relevo de sentencia y paralización del lanzamiento promovida por la peticionaria.[50] Según arguyó, el señor Betancourt (emplazador) realizó gestiones más que razonables para lograr el emplazamiento personal de la señora Aida Borgos, lo cual quedó constatado en la declaración jurada suscrita por este. Aún

---

[47] Íd., Anejo XX, págs. 142-144.
[48] Entrada Núm. 65 del expediente digital del caso en el SUMAC.
[49] Apéndice de la petición de *Certiorari*, Anejo XVIII, págs. 133-139.
[50] Íd., Anejo XXI, págs. 145-157.

más, esbozó que se cumplió con todo lo requerido para el emplazamiento por edicto y la notificación de la *Sentencia.* A su vez, adujo que la información provista por la peticionaria en sus comparecencias y los informes de las agencias pertinentes confirmaron que la señora Aida Borgos residía en la propiedad y era la última dirección conocida al instarse el pleito. A ello, agregó que nada requería que la recurrida hiciera gestiones con los hijos de la peticionaria para lograr su emplazamiento, pero, en todo caso, quedó demostrado, en su *Moción en solicitud de anotación de rebeldía*[51], que la señora Nieves acusó recibo del emplazamiento por edicto y de la *Demanda.* Por último, argumentó que no se cumplían con los requisitos estatutarios para la concesión del relevo de sentencia y que, además, quedó probado que tenía el mejor título.

El 7 de enero de 2025, el TPI emitió la *Resolución* recurrida en la que declaró No Ha Lugar la solicitud de relevo de sentencia promovida por la peticionaria y, en consecuencia, ordenó la continuación de los procedimientos post sentencia.[52] Además, expresó que la señora Aida Borgos debía presentar un pleito independiente para litigar el alegado fraude en la adquisición del título de la propiedad por la señora Carmen Borgos.

El 16 de enero de 2025, la señora Aida Borgos presentó una *Moción de reconsideración y solicitud de determinaciones de hecho y de derecho* en la que solicitó al TPI que reconsiderara su rechazo al relevo de sentencia.[53] En la alternativa, solicitó que se dejara sin efecto la anotación de rebeldía y se celebrara una vista evidenciaria o se paralizara la orden de lanzamiento para recurrir ante el Tribunal de Apelaciones. Sobre los méritos, argumentó que, si bien el TPI no estaba obligado a celebrar una vista, debía llevarla a cabo

---

[51] Apéndice del *Alegato en oposición a recurso de certiorari*, Anejo III, pág. 11-13.
[52] Íd., Anejo XXII, pág. 159. Notificada y archivada digitalmente en autos el 8 de enero de 2025.
[53] Íd., Anejo XXIII, págs. 161-171.

porque existían razones válidas que requerían la presentación de prueba, especialmente cuando la información en el expediente planteaba interrogantes sobre la titularidad de la propiedad. Al igual, repasó las insuficiencias de la declaración jurada del emplazador, subrayando que se detallaron gestiones encaminadas ineficazmente para lograr el emplazamiento personal de la peticionaria. Basándose en ello, reafirmó que el foro primario no adquirió jurisdicción sobre su persona.

Ese mismo día, el TPI emitió una *Orden* en la que declaró No Ha Lugar la reconsideración solicitada por la peticionaria.[54]

Inconforme aún, el 24 de enero de 2025, la señora Aida Borgos radicó la petición de *Certiorari* de epígrafe y le imputó al TPI la comisión de los siguientes errores:

> PRIMER ERROR: ERRÓ EL TPI EN DETERMINAR QUE EL TRIBUNAL HABÍA ADQUIRIDO JURISDICCIÓN SOBRE LA AQUÍ CODEMANDADA-PETICIONARIA EN EL CASO SOBRE DESAHUCIO EN PRECARIO, CIVIL NÚMERO SJ2023CV05464, POR RAZÓN DE QUE LA DECLARACIÓN JURADA DEL EMPLAZADOR ERA INSUFICIENTE PARA AUTORIZAR EL EMPLAZAMIENTO POR EDICTO DE LA DEMANDADA, YA QUE LA MISMA SÓLO EXPRESA MERAS GENERALIDADES SOBRE LAS DILIGENCIAS LLEVADAS A CABO PARA EMPLAZARLOS.
>
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA DE SAN JUAN AL DICTAR SENTENCIA EN REBELDÍA Y ORDENADO EL DESAHUCIO DE LA DEMANDADA SIN LA CELEBRACIÓN DE VISTA PRESENCIAL EN VIOLACIÓN A LA LEY DE DESAHUCIO, 32, LPRA, SEC. 2821 ET SEQ Y EL DEBIDO PROCESO DE LEY.
>
> TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONCEDER VISTA EVIDENCIARIA PARA CONSIDERAR LOS RECLAMOS DE LA PARTE DEMANDADA, EN SU MOCIÓN DE RELEVO DE SENTENCIA, NEGÁNDOLE ASÍ SU DERECHO AL DEBIDO PROCESO DE LEY.

En esencia, su posición es que el TPI no adquirió jurisdicción sobre ella, la *Sentencia* dictada en el caso era nula porque no se celebró una vista presencial según requiere el Art. 623 del Código de Enjuiciamiento Civil, *supra*, y el foro primario debió conceder una

---

[54] Íd., Anejo XXIV, pág. 172. Notificada y archivada digitalmente en autos el 22 de enero de 2025.

vista evidenciaria para evaluar los méritos de la moción de relevo de sentencia.

Según plantea, la publicación de los edictos se hizo en violación de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, y el debido proceso de ley, toda vez que el emplazador no realizó gestiones eficaces dirigidas a localizar a la peticionaria. Ello, aduce, quedó evidenciado por la ínfima información y detalle que contenía la declaración jurada del señor Betancourt, la cual se redujo a meras generalidades y expresiones estereotipadas. En detalle, destaca que:

(1) No precisó la hora del día, ni el tiempo que le tomó realizar gestiones al visitar la propiedad el 21, 24 y 27 de junio de 2024;

(2) No explicó cómo sabía que no había nadie en la propiedad, ni qué tipo de mensaje dejó;

(3) No detalló cómo se aseguró que no se habían comunicado con él sobre su visita;

(4) No ofreció detalles adicionales al nombre del vecino con el que habló;

(5) No especificó cuántas veces visitó la propiedad el 24 y 27 de junio de 2024, ni qué hizo específicamente allí;

(6) No identificó a la vecina con la que habló, ni qué día lo hizo, ni ofreció detalles sobre su conocimiento, relación al área o la peticionaria;

(7) No especificó cuántas veces llamó a la señora Damaris Nieves, ni acreditó detalles sobre la gestión;

(8) La peticionaria no corroboró que el número de teléfono perteneciera a la señora Damaris Nieves;

(9) No detalló cuándo visitó el Cuartel de la Policía y la Alcaldía de San Juan, ni la distancia de estas oficinas respecto a la propiedad;

(10) No detalló la fecha ni la hora de la búsqueda en internet;

(11) No relató gestiones realizadas para contactar a otros familiares de la señora Aida Borgos.

(12) El emplazador optó por juramentar su declaración ante la Secretaría del TPI en Humacao, pese a ser vecino de Carolina y realizar gestiones respecto a una propiedad ubicada en San Juan.

Además, arguye que presentó evidencia suficiente que sugería razonablemente que la propiedad pertenecía a una comunidad hereditaria cuando el Municipio de San Juan la transfirió a la recurrida. A ello, añade que la escritura de segregación y compraventa a favor de la señora Carmen Borgos contenía vicios de nulidad que requieren la adjudicación del TPI, tales como la

comparecencia de la recurrida sin ser residente *bona fide* de la propiedad, al ser vecina de Nueva York.

En contraste, el 6 de febrero de 2025, la recurrida presentó una *Moción de desestimación* en la que solicitó que desestimáramos la petición de *Certiorari* por falta de jurisdicción. Según alega, la peticionaria intentó utilizar el recurso como subterfugio para que atendamos asuntos que advinieron finales y firmes, los cuales debió disputar oportunamente mediante una reconsideración ante el foro primario o una apelación ante el Tribunal de Apelaciones. A ello, añade que los errores planteados en el recurso no se relacionan a los requisitos para conceder el relevo de una sentencia, sino a asuntos de jurisdicción sobre la persona y materias procesales. Asimismo, denuncia que la peticionaria presentó documentos que no fueron sometidos oportunamente ante el TPI y, por lo tanto, no deberían ser considerados por esta Curia. Por último, enfatiza que el recurso incumplió las normas del Tribunal de Apelaciones porque, al no utilizar doble espacio para el escrito, acortó el documento a diecinueve (19) páginas, mientras que de haberlo utilizado según se requiere, hubiese excedido el límite de veinticinco (25) páginas.

Igualmente, la recurrida radicó un *Alegato en oposición a recurso de certiorari* en el que argumenta en contra de la expedición del auto de *Certiorari* y, en la alternativa, solicita que confirmemos la *Resolución* recurrida. En síntesis, su contención es que el presente recurso constituye un subterfugio para litigar los méritos del caso, atendidos por el foro primario en una *Sentencia* que advino final, firme e inapelable.

Sobre el primer error, arguye que la señora Aida Borgos pretende establecer requisitos que no existen para la declaración jurada del emplazador sobre las gestiones realizadas para emplazar personalmente a una parte demandada. A esos efectos, colige que no es requerido que se detalle la hora en que se realizó la diligencia,

ni su duración, ni cómo el emplazador se enteró que no había nadie en la casa, ni si llamó en voz alta o cuántas veces tocó a la puerta y por cuánto tiempo. Según argumenta, esas exigencias no fueron necesarias para concluir que las diligencias realizadas fueron suficientes y, por el contrario, impondrían una carga onerosa sobre las partes. En su lugar, aduce que la declaración jurada ofrece el nivel de especificidad requerido, así como todas las gestiones realizadas por el emplazador.

Sobre el segundo error, postula que el planteamiento sobre la celebración de una vista presencial no cae dentro de los requisitos estatutarios que justifican el relevo de una sentencia. Aún más, enfatiza en que a la peticionaria se le anotó la rebeldía porque decidió no comparecer luego de ser emplazada y, por ello, el TPI resolvió dentro de su discreción que no era necesaria la celebración de la vista. Al respecto, también añade que la celebración de vista en casos en que se ha anotado la rebeldía es discrecional, a menos que sea requerido comprobar la veracidad de una aseveración mediante prueba, lo cual el foro primario estimó innecesario.

Sobre el tercer error, agrega que tampoco es obligatoria la celebración de una vista al presentarse una moción de relevo de sentencia. Asimismo, puntualiza que el fraude alegado por la peticionaria no puede considerarse como fraude al tribunal, toda vez que únicamente ataca la validez del negocio jurídico mediante el que la recurrida adquirió la titularidad de la propiedad.

Esbozados los hechos procesales más importantes para la atención del presente recurso, pormenorizamos el derecho aplicable a las controversias que nos presenta.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las

determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[55] establece las instancias en las que le foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.***, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorar*i que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Contruction, Inc.***, 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

---

[55] Esta Regla dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[56]

**B.**

El emplazamiento es un mecanismo procesal por el cual se le notifica al demandado, a grandes rasgos, sobre la existencia de una reclamación presentada en su contra "para así garantizarle su derecho a ser oído y a defenderse si así lo desea". *Rivera v. Jaume*, 157 DPR 562, 575 (2002). Este mecanismo también se utiliza para que un tribunal pueda adquirir jurisdicción sobre el demandado de forma que este quede obligado por el dictamen que en su día recaiga. *Ross Valedón v. Hosp. Dr. Susoni et al.,* 213 DPR 481, 487-488 (2024); *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 480 (2019). En otras palabras, el emplazamiento "representa el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial". *Pérez Quiles v. Santiago Cintrón*, 206 DPR 379, 384 (2021), citando a *Acosta v. ABC, Inc.*, 142 DPR 927 (1997). Cónsono con lo anterior, "no es hasta que se diligencia el emplazamiento y se adquiere jurisdicción que la persona puede ser

---

[56] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

considerada propiamente parte; aunque haya sido nombrada en el epígrafe de la demanda, hasta ese momento solo es parte nominal". *Rivera Marrero v. Santiago Martínez*, supra, pág. 483 (Énfasis suprimido) (citas omitidas); *Torres Zayas v. Montano Gómez et als.*, 199 DPR 458, 467 (2017). Es por ello por lo que el demandante ostenta la obligación de dar cumplimiento estricto a los requisitos del emplazamiento y a su diligenciamiento, pues existe una política pública que requiere que el demandado sea emplazado y notificado debidamente "para evitar el fraude y que los procedimientos judiciales se utilicen para privar a una persona de su propiedad sin el debido proceso de ley". *Rivera Marrero v. Santiago Martínez*, supra, pág. 480; Véase, además, *Ross Valedón v. Hosp. Dr. Susoni et al.,* supra; *Pérez Quiles v. Santiago Cintrón*, supra.

En esa misma línea, la Regla 4 de Procedimiento Civil, *supra*, R. 4, regula el proceso y las formalidades del emplazamiento en casos civiles. *Ross Valedón v. Hosp. Dr. Susoni et al.,* supra; *Pérez Quiles v. Santiago Cintrón*, supra. Como parte de ese proceso, la parte demandante debe presentar un formulario de emplazamiento junto a la demanda para que el Secretario o Secretaria del Tribunal lo expida inmediatamente. Regla 4.1 de Procedimiento Civil, *supra*, R. 4.1; *Torres Zayas v. Montano Gómez et als.*, supra, págs. 468-469. Luego de expedirse el emplazamiento, el término para diligenciarlo es de 120 días improrrogables, a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto. Regla 4.3 (c) de Procedimiento Civil, *supra*, R. 4.3 (c); *Bernier González v. Rodríguez Becerra*, 200 DPR 637 (2018); *Torres Zayas v. Montano Gómez et als.*, supra.

Los requisitos dispuestos por la Regla 4 de Procedimiento Civil, *supra*, son de estricto cumplimiento. *Rivera Marrero v. Santiago Martínez*, supra; *Torres Zayas v. Montano Gómez et als.*, supra. Aun así, la falta de un emplazamiento correcto dirigido

a la parte demandada produce la nulidad de la sentencia emitida por falta de jurisdicción sobre dicha parte. ***Torres Zayas v. Montano Gómez et als.***, supra, págs. 468-469; ***Lanzo Llanos v. Banco de la Vivienda***, 133 DPR 507, 512 (1993).

Entretanto, la Regla 4.6 de Procedimiento Civil, *supra*, R. 4.6, permite el emplazamiento mediante edictos y regula su publicación en periódicos de circulación general. En lo pertinente, prescribe lo siguiente:

> (a) Cuando la persona a ser emplazada esté fuera de Puerto Rico, que estando en Puerto Rico no pudo ser localizada después de realizadas las diligencias pertinentes o se oculte para no ser emplazada, o si es una corporación extranjera sin agente residente y así se compruebe a satisfacción del tribunal mediante una declaración jurada que exprese dichas diligencias, y aparezca también de dicha declaración o de la demanda presentada que existe una reclamación que justifica la concesión de algún remedio contra la persona que ha de ser emplazada, o que dicha persona es parte apropiada en el pleito, el tribunal podrá dictar una orden para disponer que el emplazamiento se haga por un edicto. No se requerirá un diligenciamiento negativo como condición para dictar la orden que disponga que el emplazamiento se haga mediante edicto. Regla 4.6 de Procedimiento Civil, *supra.* (Subrayado nuestro).

Estos requisitos persiguen evitar el fraude y, por ello, siempre se ha requerido su más estricto cumplimiento. ***Lanzo Llanos v. Banco de la Vivienda***, supra, pág. 513. Así, el tribunal podrá conceder el permiso para emplazar mediante edictos únicamente cuando se demuestre de forma fehaciente que se han llevado a cabo aquellas diligencias potencialmente efectivas con el fin de encontrar a la persona demandada. Íd. A esos efectos, la declaración jurada debe contener hechos específicos demostrativos de dicha diligencia y no meras generalidades. Íd., citando a ***Mundo v. Fúster,*** 87 DPR 363 (1983). Entre estos, nuestro más alto foro ha listado algunos ejemplos de lo que sería una buena práctica al intentar encontrar a la persona demandada, tales como expresar con qué personas se investigó y su dirección, y acudir a autoridades como la policía y la alcaldía. Íd., págs. 513-514. Sin embargo, estos ejemplos no constituyen una enumeración cerrada de posibilidades, ni sirven

como fundamentos para la recitación automática de alegaciones estereotipadas para obtener la autorización del foro primario para emplazar mediante edictos. Íd., pág. 514. En fin, la determinación del tribunal sobre si el demandante ha sido diligente en su gestión se hará caso a caso, respondiendo a los hechos particulares de cada uno. Íd.

### C.

La rebeldía es aquella posición procesal en donde se coloca a la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir con su deber procesal. ***Rivera Figueroa v. Joe's European Shop***, supra, pág. 587, citando a R. Hernández Colón, _Derecho Procesal Civil_, 5ª ed., San Juan, Ed. LexisNexis, 2010, pág. 287. Es por ello por lo que el propósito del procedimiento de la anotación de rebeldía es desalentar la dilación como estrategia de litigio. Íd., citando a J.A. Cuevas Segarra, _Tratado de derecho procesal civil_, 2ª ed., San Juan, Pubs. J.T.S., 2011, T. IV, pág. 1340. Asimismo, es eminente resaltar que "es nota constitutiva de la justicia el tiempo oportuno, por lo que una dilación en la respuesta judicial puede ser una fuente de injusticia". Íd., citando a R.L. Vigo, _Ética y responsabilidad judicial_, Buenos Aires, Rubinzal-Culzoni Editores, pág. 38).

A esos efectos, la Regla 45.1 de Procedimiento Civil, *supra*, R. 45.1, gobierna la anotación de rebeldía disponiendo los fundamentos bajo los cuales una parte puede ser declarada en rebeldía. ***Mitsubishi Motor v. Lunor y otros,*** 212 DPR 807, 823 (2023); ***Rivera Figueroa v. Joe's European Shop***, supra. En lo pertinente, la Regla 45.1 de Procedimiento Civil, *supra*, dispone que:

> [c]uando una parte contra la cual se solicite una sentencia para conceder un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o la Secretaria anotará su rebeldía.
> […]

Esta anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).
[...]

Asimismo, la Regla 45.2(b) de Procedimiento Civil, *supra*, R. 45.2(b), prescribe que el tribunal podrá dictar sentencia en rebeldía, ateniéndose a lo siguiente:

[...] Si para que el tribunal pueda dictar sentencia o para ejecutarla se hace necesario fijar el estado de una cuenta, determinar el importe de los daños, <u>comprobar la veracidad de cualquier aseveración mediante prueba o hacer una investigación de cualquier otro asunto</u>, <u>el tribunal deberá celebrar las vistas que crea necesarias</u> y adecuadas o encomendar la cuestión a un comisionado o una comisionada. [...] (Subrayado nuestro).

**D.**

La Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2, establece el mecanismo procesal mediante el cual una parte puede solicitarle al foro de instancia el relevo de una sentencia, siempre que se encuentre presente una de las instancias contempladas en ésta. ***García Colón et al. v. Sucn. González***, 178 DPR 527, 539 (2010); ***De Jesús Viñas v. González Lugo***, 170 DPR 499, 513 (2007); ***Náter v. Ramos***, 162 DPR 616, 624 (2004).

La citada regla es un remedio post sentencia, que tiene el propósito de impedir que "[...] tecnicismos y sofisticaciones frustren los fines de la justicia e incorpora la facultad de los tribunales para dejar sin efecto alguna sentencia u orden suya por causa justificada". ***De Jesús Viñas v. González Lugo***, supra. Véase, además, ***García Colón et al. v. Sucn. González,*** supra. Al evaluar si debe concederse, el tribunal realizará un justo balance entre dos (2) intereses: por un lado, que toda litigación sea concluida y tenga finalidad y, de otra parte, que en todo caso se haga justicia. ***Náter v. Ramos***, supra.

La Regla 49.2 de Procedimiento Civil, *supra*, dispone que:

Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:

(a) Error, inadvertencia, sorpresa, o negligencia excusable;

(b) Descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(c) Fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de la parte adversa;

(d) Nulidad de la sentencia;

(e) La sentencia ha sido satisfecha, renunciada, o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuare en vigor; o

(f) Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

[...] La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento.

[...]

El peticionario tiene la obligación de justificar su solicitud al menos, en una de las razones enumeradas en la citada regla, para que proceda el relevo de sentencia. *García Colón et al. v. Sucn. González*, supra, pág. 540. Ahora bien, independientemente que esté presente alguna de esas razones, "[...] el relevar a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha". *Náter v. Ramos*, supra; *Rivera v. Algarín*, 159 DPR 482, 490 (2003).

Sobre la causa de fraude, nuestro más alto foro ha precisado que se trata de fraude al tribunal. *Pardo v. Sucn. Stella,* 145 DPR 816, 824 (1998). Este "sólo incluye actuaciones cuyo efecto o intención sea mancillar al tribunal como tal, o que es perpetuado por oficiales del tribunal, de tal forma que la maquinaria judicial no pueda ejercer como de costumbre su imparcial labor de juzgar los casos que se le presentan para adjudicación". Íd. De ahí que las alegaciones falsas incluidas en la reclamación por sí solas no constituyen fundamentos para concluir que hubo fraude al tribunal. Íd., págs. 824-825. Por todo ello, una acción sobre fraude al tribunal tiene que exponer detalladamente las circunstancias que lo

constituyen, no siendo suficiente que meramente se alegue. Íd., pág. 825. A ello se añade que el fraude nunca se presume y, por consiguiente, debe ser probado con preponderancia de la evidencia. Íd.

Al evaluar una solicitud de relevo de sentencia en rebeldía, el tribunal considerará los siguientes criterios: (1) si el peticionario tiene una buena defensa en los méritos; (2) el tiempo que transcurrió entre la sentencia y la solicitud de relevo de sentencia; y (3) el grado de perjuicio que puede ocasionar a la parte contraria la concesión del relevo de sentencia. *Rivera Figueroa v. Joe's European Shop*, *supra,* págs. 591-592, citando a *Neptune Packing Corp. v. Wackenhut Corp.,* 129 DPR 283, 293-294 (1988). No obstante, el Tribunal Supremo ha reiterado que la interpretación para conceder este remedio debe ser liberal y "[…] cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una sentencia o anotación de rebeldía, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos". *García Colón et al. v. Sucn. González*, supra, pág. 541, citando a *Díaz v. Tribunal Superior*, 93 DPR 79, 87 (1966). Véase, además, *Rivera Figueroa v. Joe's European Shop*, *supra,* pág. 592.

Por último, la celebración de una vista siempre que se invoque la Regla 49.2 de Procedimiento Civil no es necesariamente obligatoria. *Ortiz Serrano v. Ortiz Díaz,* 106 DPR 445, 449 (1977); Cuevas Segarra, *op. cit.*, pág. 1401. Por ello, requerir la celebración de una vista en todos los casos sería un ejercicio inútil en contra de la solución justa, rápida y económica de los casos, especialmente en aquellos en los que surja de la faz de la moción que no tiene méritos. Íd.

**E.**

Los Arts. 620-634 del Código de Enjuiciamiento Civil, *supra* secs. 2821-2838, regulan el procedimiento a seguir para presentar

una acción de desahucio. El desahucio es un procedimiento especial de naturaleza sumaria cuyo propósito principal "[…]es recuperar la posesión de hecho de un bien inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que lo detente sin pagar canon o merced alguna." *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 10 (2016). Debido a que lo único que se pretende recobrar es la posesión, el Tribunal Supremo en reiteradas ocasiones ha resuelto que: "en la acción sumaria debe limitarse la concurrencia o consolidación de otras acciones o defensas". *ATPR v. SLG Volmar-Mathieu*, supra. De ordinario, cuando se presentan otras defensas afirmativas, el procedimiento sumario se puede convertir al trámite ordinario. Íd.; *Jiménez v. Reyes,* 146 DPR 657 (1998). En esos casos, la reclamación seguirá las reglas de litigación civil con exclusión de la legislación especial que permite el desahucio sumario con sus respectivos plazos y condiciones. Íd.

Ahora bien, también es doctrina general, reconocida por nuestro más alto foro, que los conflictos de título no pueden dilucidarse en el juicio de desahucio, toda vez que se trata de un procedimiento sumario en el que únicamente se intenta recobrar la posesión de un inmueble por aquel que tiene derecho a ella. *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971). Ante ello, si un demandado en un proceso de desahucio produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar la propiedad y que tiene un mejor título, surge un conflicto que hace improcedente que se dilucide la acción de desahucio por la vía sumaria. Íd.

En específico, el Art. 620 del Código de Enjuiciamiento Civil, *supra* sec. 2821, reconoce el derecho de los dueños de una finca o cualquier otro que tenga derecho a disfrutarla de promover un juicio de desahucio. Esta acción, como pauta el Art. 621 del Código de Enjuiciamiento Civil, *supra* sec. 2822, procederá en contra de

cualquier persona que detente la posesión material o disfrute precariamente de la propiedad, sin pagar canon o merced alguna.

El proceso se regula en el Art. 623 del Código de Enjuiciamiento Civil, *supra* sec. 2824, en el que se dispone que:

> Se promoverá el juicio, por medio de demanda redactada conforme a lo prescrito para el juicio ordinario por las Reglas de Procedimiento Civil y presentada aquélla, se mandará a convocar al actor y al demandado para comparecencia, que deberá celebrarse dentro de los diez (10) días siguientes a aquel en que se presente en la reclamación.

> Disponiéndose, que si en dicha vista quedare demostrado que el mandamiento es contra una familia de probada insolvencia económica, el tribunal ordenará que se notifique a los Secretarios de los Departamentos de la Familia y de la Vivienda, con copia de la demanda de desahucio promovida. Estas agencias evaluarán la condición socioeconómica de la familia y le brindarán la ayuda social que esté justificada.

> Además, rendirán un informe al tribunal, en el término improrrogable de treinta (30) días, sobre las ayudas a que la familia tenga derecho, y cuáles se habrán de proveer. Se dispone, además, que si en dicha vista queda demostrado que el mandamiento es contra una persona de edad avanzada o una persona con impedimento, el tribunal ordenará la notificación a la Oficina del Procurador de Personas de Edad Avanzada o la Oficina del Procurador de Personas con Impedimentos, según sea el caso, a fin de que estas entidades le brinden la ayuda que esté justificada.

> Además, rendirán un informe al tribunal, en el término improrrogable de treinta (30), días sobre las ayudas a que la persona tenga derecho, y cuáles se habrán de proveer.

Dentro del procedimiento estatuido, el Art. 624 del Código de Enjuiciamiento Civil, *supra* sec. 2825, requiere, respecto al emplazamiento, lo siguiente:

> Si no se encontrase el demandado en el lugar del juicio o no tuviere en él su domicilio, se entenderá la citación con la persona que en cualquier forma estuviere encargada en su nombre del cuidado de la finca en dicho lugar.

> Al citarse al demandado se le apercibirá de que no compareciendo por sí o por legítimo apoderado se decretará el desahucio sin más citarlo ni oírlo.

Sobre las apelaciones, el Art. 628 del Código de Enjuiciamiento Civil, *supra* sec. 2830, permite que la parte en contra de la que recaiga una sentencia podrá apelarla y el Art. 629 del Código de Enjuiciamiento Civil, *supra* sec. 2831, establece para ello un término de cinco (5) días, contados a partir de la fecha de archivo en autos de la notificación de la sentencia.

Por último, sobre el lanzamiento, el Art. 632 del Código de Enjuiciamiento Civil, *supra* sec. 2836, provee lo siguiente:

La sentencia que declare con lugar la demanda de desahucio ordenará el lanzamiento del demandado, desde que dicha sentencia sea final y firme. Dicho mandamiento será expedido por la Secretaría del Tribunal a solicitud de la parte, desde que la sentencia sea final y firme. En aquellos casos en que el tribunal haya determinado la insolvencia económica de la familia contra la cual procede el desahucio, se notificará con copia de la sentencia, inmediatamente, a los Secretarios de los Departamentos de la Familia y de la Vivienda, para que estas agencias continúen brindando sus servicios a la familia afectada. En estos casos, el término para el lanzamiento será de veinte (20) días improrrogables, los cuales empezarán a contarse a partir de la fecha de dicha notificación.

**IV.**

En el caso de marras, nos corresponde determinar si procede el relevo de una *Sentencia* que fue dictada en rebeldía contra la parte cuyo desahucio ordenó el dictamen, cuando no se realizó una vista de desahucio, ni una vista evidenciaria. Además, procede dirimir la validez de la declaración jurada presentada en apoyo del emplazamiento por edicto, el cual fue fundamento para la anotación de rebeldía tras la incomparecencia de la parte emplazada.

Para la peticionaria, la *Sentencia* debe ser relevada porque no se realizó una vista para dirimir el asunto del desahucio, ni una vista evidenciaria para litigar su solicitud de relevo. A la vez, arguye que el relevo procede porque la recurrida incurrió en fraude al obtener del Municipio de San Juan la segregación y compraventa de la propiedad mediante la representación falsa de que residía en ella. Según aduce, ese fraude requiere la adjudicación del TPI y constituye fraude de acuerdo con la Regla 49.2(c) de Procedimiento Civil, *supra,* R. 49.2(c).

Ahora bien, como cuestión de umbral, la peticionaria también plantea que el foro primario no adquirió jurisdicción sobre ella porque la declaración jurada del emplazador, utilizada para justificar el emplazamiento por edicto, era insuficiente para demostrar que se realizaron gestiones eficaces para localizar a la

peticionaria. En apoyo de esa contención, levanta una serie de señalamientos respecto a falta de detalles en la declaración sobre las gestiones realizadas. Según plantea, esas circunstancias justifican el relevo por nulidad de la *Sentencia*, de acuerdo con la Regla 49.2(d) de Procedimiento Civil, *supra*, R. 49.2(d).

Para la recurrida, no procede el relevo de la *Sentencia* porque el fraude alegado por la peticionaria no es el tipo de fraude que la Regla 49.2 de Procedimiento Civil, *supra*, establece como instancias que fundamentan ese mecanismo. Al igual, argumenta que el TPI no estaba obligado a celebrar una vista luego de anotar la rebeldía de la peticionaria, ni ante la presentación de la moción de relevo. Según alega, la celebración de una vista tras anotar la rebeldía es discrecional, a menos que sea requerida para probar la veracidad de una aseveración realizada en la reclamación, lo cual no hizo falta en este caso. Asimismo, adujo que la declaración jurada del emplazador fue suficiente para justificar el emplazamiento por edicto, según requiere la Regla 4 de Procedimiento Civil, *supra*, porque proveyó el nivel de especificidad requerido sobre las gestiones realizadas para lograr el emplazamiento personal. Aún más, refutó que la peticionaria busca imponer exigencias que no surgen de la referida regla, ni de la jurisprudencia. Por último, también solicita la desestimación del recurso por falta de jurisdicción porque fue presentado como subterfugio para atender los méritos del caso que debió atenderse mediante una apelación a la sentencia, fue acompañado con documentos que no fueron presentados oportunamente ante el TPI e incumplió con los requisitos de formato del Reglamento del Tribunal de Apelaciones, *supra*.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica apelativa adjudicativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*,

resolvemos que procede expedir el auto de *Certiorari* y confirmar la *Resolución* recurrida. De un examen sosegado del expediente del caso, los argumentos de las partes y la *Sentencia* emitida por el TPI surge claramente que el asunto planteado amerita el ejercicio de nuestra facultad discrecional al expedir el auto de *certiorari*. Del análisis correspondiente, se desprende que el TPI no incidió en los errores señalados.

Por eso, además, no procede la solicitud de desestimación radicada por la recurrida. En especial, porque la falta de méritos en los planteamientos de la peticionaria sobre el fraude para efectos de la solicitud de relevo bajo la Regla 49.2 de Procedimiento Civil, *supra*, no nos priva de jurisdicción. Por el contrario, es precisamente eso lo que corresponde analizar ante la presente petición de *Certiorari*. Conservamos jurisdicción independientemente de los documentos presentados en apoyo del recurso y la alegada extensión del escrito en violación del Reglamento del Tribunal de Apelaciones, *supra*. En vista de la determinación a la que llegamos, es procedente denegar la solicitud de desestimación.

En primer lugar, el foro primario adquirió jurisdicción sobre la persona de la señora Aida Borgos porque cumplió a cabalidad con lo exigido para el emplazamiento por edicto de una parte demandada, tal y como establece la Regla 4.6 de Procedimiento Civil, *supra*, especialmente en lo que se requiere a la declaración jurada sobre las diligencias realizadas e infructuosas en la tarea de localizar a dicha parte. Tras su emplazamiento por edicto, notificado además a la dirección que luego identificó como su residencia, la peticionaria no compareció y, consecuentemente, el TPI correctamente le anotó la rebeldía, tal y como permite la Regla 45.1 de Procedimiento Civil, *supra*.

En desacuerdo con lo anterior, la peticionaria presenta varias objeciones respecto a la declaración jurada del emplazador, el señor

Betancourt. No obstante, estas son meras generalidades que no refutan los detalles que ofreció el declarante sobre las gestiones realizadas para dar con el paradero de la peticionaria. Además, intenta que se le imponga a la recurrida la obligación de llevar a cabo unas diligencias irrazonables, tales como acudir a los familiares de la señora Aida Borgos – lo cual se hizo tras el recibo de la reclamación por la señora Damaris Nieves – y detallar cómo supo que no había nadie en sus visitas a la última dirección conocida de la peticionaria, entre otras. Un minucioso análisis de la declaración jurada del señor Betancourt arroja suficiente especificidad para justificar el emplazamiento por edicto. Entre las diligencias, detalló que visitó la propiedad en tres (3) días distintos del mes de junio de 2024, dejó un mensaje para que se comunicaran con él sin que lo hicieran, supo de parte de un vecino que la casa estaba vacía, realizó llamadas y envió mensajes de texto a la señora Damaris Nieves sin lograr comunicación alguna y visitó el Cuartel de la Policía Municipal de San Juan, así como la Alcaldía, pero no recibió indicio del paradero de la peticionaria.

En segundo lugar, tras la anotación de la rebeldía de la peticionaria, el foro primario tampoco estaba obligado a realizar una vista previo a dictar sentencia. Lo contrario impediría la culminación de los procedimientos ante la ausencia de una parte y supondría la inefectividad de la rebeldía como disuasivo a la incomparecencia y dilación. Con la anotación de rebeldía, no era requisito que el TPI realizara la vista, dado que procedía dar por admitidas las aseveraciones de las alegaciones afirmativas según presentadas por la parte demandante, tal y como pauta la Regla 45.1 de Procedimiento Civil, *supra.* La celebración de una vista sería imprescindible si, como establece la Regla 45.2(b) de Procedimiento Civil, *supra,* se hace necesario comprobar la veracidad de cualquier aseveración mediante prueba. Ese no fue el caso. Tanto es así que

un estudio de la *Demanda* y la prueba sometida por la recurrida ante el foro primario demuestra que no hacía falta la celebración de vista alguna para examinar la veracidad de las alegaciones básicas de la reclamación.

En tercer lugar, el foro primario tampoco estaba obligado a realizar una vista evidenciaria una vez la peticionaria presentó su solicitud de relevo de sentencia. El planteamiento de fraude, alegado por la peticionaria, no es el mismo fraude al Tribunal que, bajo la Regla 49.2 de Procedimiento Civil, *supra*, permite el relevo de los efectos de un dictamen. Por tal razón, para efectos de fraude al tribunal, la solicitud de la peticionaria carece de méritos de su faz, lo cual hace innecesaria la celebración de una vista. ***Ortiz Serrano v. Ortiz Díaz,*** supra. La peticionaria señala que la señora Carmen Borgos cometió fraude <u>en el 2012</u> para obtener la propiedad a su favor de parte del Municipio de San Juan. Nada de ello implica al TPI en alegación alguna de fraude. Más aún, no estamos ante una buena defensa de la peticionaria y revertir los efectos de la *Sentencia* provocaría un perjuicio impermisible a la recurrida, a la luz de los criterios esbozados en la jurisprudencia. ***Rivera Figueroa v. Joe's European Shop***, supra; ***Neptune Packing Corp. v. Wackenhut Corp.,*** supra.

Adviértase, además, que en la acción de desahucio no se dirime un conflicto de títulos sobre la propiedad. La peticionaria no está huérfana de remedio, pues tiene a su disposición la radicación de un pleito ordinario en contra de la recurrida en donde pueda litigar sus alegaciones sobre el título de la propiedad.

Por todo lo anterior, procede confirmar el dictamen recurrido, al ser conforme a derecho.

**V.**

Por los fundamentos anteriormente pormenorizados, se *expide* el auto de *Certiorari* y se *confirma* la *Resolución* recurrida. También, se deja sin efecto la paralización de los procedimientos ante el foro primario y se ordena la continuación de los procesos, en conformidad con esta *Sentencia*.

Lo anterior sin perjuicio de que la peticionaria pueda radicar acción independiente para litigar sus alegaciones sobre el título de la propiedad.

Lo acordó y manda el Tribunal, y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones